J-A29016-22

2023 PA Super 104

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARY KATHERINE DAHL | : | |
| | : | |
| Appellant | : | No. 309 WDA 2022 |

Appeal from the Judgment of Sentence Entered November 1, 2021
In the Court of Common Pleas of Butler County Criminal Division at
No(s): CP-10-CR-0000174-2020

BEFORE: BENDER, P.J.E., OLSON, J., and KUNSELMAN, J.

OPINION BY OLSON, J.: **FILED: June 12, 2023**

Appellant, Mary Katherine Dahl, appeals from the judgment of sentence entered on November 1, 2021, as made final by the denial of Appellant's post-sentence motion on February 15, 2022. We vacate Appellant's judgment of sentence and remand for resentencing.

The Commonwealth charged Appellant with committing a number of crimes, including three counts of theft by deception and one count of securing the execution of documents by deception.[1] The charges related to Appellant's theft of a 2012 Jeep Grand Cherokee that was owned by her former son-in-law, Samuel Donelly (hereinafter "Donelly"); Appellant accomplished this theft by filing a "Motion for Involuntary Transfer of Vehicle Ownership" in

---

[1] 18 Pa.C.S.A. §§ 3922(a)(1)-(3) and 4114, respectively.

the Butler County Court of Common Pleas, wherein she falsely claimed that Donelly abandoned the vehicle on her property.

The case proceeded to a jury trial in August 2021. During this trial, the following evidence was presented.

Donelly testified that, in 2016, he was married to Appellant's daughter, Katherine, and working for businesses that were owned by Appellant. Donelly and Katherine lived at 307 East Second Street, in Clarion County, Pennsylvania, in a multi-generational household that was owned by Appellant. At the time, approximately 20 people lived on Appellant's Clarion County property: Donelly, Katherine, Appellant, Appellant's husband, and five families of Appellant's children. N.T. Trial, 8/9-11/21, at 65 and 67.

In August 2016, Katherine gave birth to a baby girl. However, "six hours after [their] daughter was born, . . . Katherine had an aneurysm and for the next year she was in a vegetive state." *Id.* at 66. Sadly, Katherine passed away in December 2017. *Id.* at 67.

Following Katherine's death, Donelly decided that he and his daughter would move away from Appellant's Clarion County property. *Id.* at 68. Donelly testified that, in June 2018, "about a day or two before [he] tried to leave:"

> I was presented in the morning with a family meeting where [Appellant and her family (hereinafter, collectively, "the Dahls")] . . . presented me with this paperwork. . . . And they told me that they wanted me to sign custody of my daughter to them. And if I did, everything would be fine, keep living there, keep working with them. And if I didn't

that they would fight me through the legal system to obtain custody of my daughter, they would make my life miserable and there would be an accident and something would happen to me.

*Id.*

Donelly testified that he "asked for them to give me some time to think about it." *Id.* at 69. However, that day, he contacted a friend to help him move away from the property. *Id.*

As Donelly testified, his friend arrived on the property at approximately 9:00 p.m. on June 23, 2018. *Id.* at 70. Donelly then took his daughter out of the house, placed her in the back of his 2012 Jeep Grand Cherokee (hereinafter "Jeep"), and asked his friend to watch his daughter while he retrieved his belongings. *Id.* Donelly testified:

> I was just collecting things from the house, and I heard some screaming. And when I moved back outside I saw that one of [Appellant's] daughters had moved [Appellant's] car behind [the Jeep,] blocking it in so that I couldn't leave with it.
>
> And I went out and I put my things in my car and I tried to reason with them. [Appellant's husband] came out with a bunch of his sons and started barking orders. . . .
>
> [O]ne of the sons removed my daughter from my car and a couple of the other sons forcibly removed [my friend] from the property. And at that time[, I] had started to try to reason with them further because I wanted my daughter back but I didn't feel it was safe to run after her.
>
> And when I realized there was no reasoning with them, I dialed 9-1-1 and I was instructed by the 9-1-1 operator to disarm myself, place my firearms in my car, lock the car and get off the property where I can still see everything but just off the property.

- 3 -

*Id.* at 71-72.

Donelly testified that he did as the 911 operator instructed and, eventually, the police arrived on scene. *Id.* at 73. However, Donelly was forced to leave the property that night without his daughter and without his Jeep. *Id.* at 74 and 76.

On Monday, June 25, 2018, Appellant and her husband filed for custody of Donelly's child. Following court proceedings, the trial court awarded Donelly primary custody of his daughter and granted Appellant and her husband visitation rights. *Id.* at 75.

Donelly testified that he was forced to sue the Dahls to recover his belongings. *Id.* at 79. He testified:

> I [] mentioned during the hearing that they had my Jeep. And at the time [I] had been forced to finance a new Jeep because the Jeep that I owned outright was in their possession. And [Appellant] . . . pointed out the window to my [new] Jeep that I had been financing and saying: His Jeep is right there. And I had to explain that that's the Jeep that I am financing because she has my Jeep.

*Id.*

As Donelly testified, when Appellant pointed out the window and told the court that his Jeep "is right there," Donelly became "a little confused and uncomfortable." *Id.* at 80. He testified that he then drove by the Dahls' property to "see if [his] Jeep was still there." Donelly testified that he saw his Jeep on the Dahls' property, "but with a different license plate." *Id.*

After some investigation, Donelly discovered that Appellant's company, Interstate Builders, took ownership of his Jeep through the filing of a Motion for Involuntary Transfer of Vehicle Ownership. *Id.* This motion was filed by Appellant, in the Butler County Court of Common Pleas, on September 18, 2018. It declared:

MOTION FOR INVOLUNTARY TRANSFER OF VEHICLE
OWNERSHIP

AND NOW COMES, the Petitioner; [Appellant] t/d/b/a Interstate Builders and respectfully avers the following:

1. Interstate Builders is a registered business entity operating in the Commonwealth with the principal business address of . . . 154 Kittanning St. Butler, Pa 16001.

2. Interstate Builders is bringing the instant action for the purposes of obtaining title of ownership for an abandoned vehicle.

3. The vehicle is identified as follows: 2012 Jeep Grand Cherokee. . . .

4. On or about June 26th 2018, I obtained possession of the abandoned vehicle described in paragraph 2, at my private property.

5. The individuals or entities and addresses who have or assert an interest in the above property are as follows: Samuel Adam Donelly 123 North Main Street Chicora, Pa 16025 (first address)[;] Samuel Adam Donelly 307 East Second Street East Brady, Pa 16025 (Second Address). . . .

6. I am petitioning to obtain a Certificate of Title from the Commonwealth of Pennsylvania, Department of Transportation for the following reasons:

(i) An "abandoned vehicle" in the context of private property is defined under Pennsylvania law 75 Pa.C.S.A.

§ 102 as (1) A vehicle (other than a pedacycle) shall be presumed to be abandoned under any of the following circumstances, (iv) The vehicle has remained on private property without the consent of the owner or person in control of the property for more than 24 hours.

(ii) The vehicle has been abandoned on my private property for a time period exceeding that which is outlined by statute in accordance with Title 75 Pa.C.S.A. Vehicles § 102(iv).

(iii) As evidenced by proof of mailing, and the copies of the public notices, I have made the required attempts to contact the individuals or entities whom have or assert an interest in the above property and provide them with notice of this action. No response has been received.

WHEREFORE, it is respectfully requested that the Court grant the above motion and award ownership of the above-referenced vehicle to the petitioner.

Respectfully submitted,

_____ /s
[Appellant] t/d/b/a Interstate Builders

Appellant's Motion, 9/18/18, at 1-2; Commonwealth's Exhibit 1.

Appellant attached a sworn verification to her motion, where she averred:

I, [Appellant], verify that the facts set forth in the Motion for Involuntary Transfer of Vehicle Ownership are true and correct to the best of my knowledge, information and belief. I understand that the statements herein are made subject to the penalties of 18 [Pa.C.S.A. §] 4904 relating to unsworn falsification to authorities.

Appellant's Motion, 9/18/18, at 3; Commonwealth's Exhibit 1.

Appellant averred that she served Donelly with the motion at the following addresses: "123 North Main Street, Chicora, Pa 16025" and "307

East Second Street, East Brady, Pa 16025." However, Donelly testified that the Chicora address was to Appellant's sporting goods store and the East Brady address was to Appellant's residence – and, at the time of the alleged service, Donelly did not live or accept mail at either address. N.T. Trial, 8/9-11/21, at 82-83. Indeed, Donelly testified, Appellant "served the paperwork to their own address where they lived where they knew I didn't." *Id.* at 111.

On November 29, 2018, the Honorable S. Michael Yeager, of the Butler County Court of Common Pleas, granted Appellant's Motion for Involuntary Transfer of Vehicle Ownership and transferred ownership of the Jeep from Donelly to Appellant. *Id.* at 84. Donelly testified that, from July 2018 until the time Judge Yeager granted Appellant's Motion for Involuntary Transfer of Vehicle Ownership, there were bi-weekly custody exchanges of Donelly's daughter. The exchanges occurred between Donelly and Appellant – and Appellant "was there for all but one of" the exchanges. Donelly testified that, during these many exchanges, Appellant never told him that she filed the Motion for Involuntary Transfer of Vehicle Ownership or that Judge Yeager granted the motion and involuntarily transferred ownership of Donelly's Jeep to Appellant's company. *Id.* at 97-98.

During the trial, Donelly read Appellant's former testimony from an emergency hearing on a custody petition, which related to Donelly's daughter. Appellant's testimony was given on September 4, 2018 – or two weeks before

Appellant filed the Motion for Involuntary Transfer of Vehicle Ownership. During cross-examination, Appellant testified:

Q: You mentioned transportation as one of your concerns.

[Appellant:] Uh-huh (yes).

Q: Isn't it true that Mr. Donelly has a vehicle?

[Appellant:] Uh-huh (yes).

Q: Isn't it true that that vehicle is currently at your residence?

[Appellant:] Yes, it is.

Q: Isn't it true that, although he has the vehicle, you have or your husband have refused to provide that vehicle to him?

[Appellant:] If [Donelly] would like to come get his vehicle, he's welcome to do that, but he needs to work to do that.

Q: What do you mean he needs to work to get that?

[Appellant:] [Donelly] owes money to us for some things that he needs to settle what he owes before he moved out. And it's just not a matter of taking the vehicle. He can't dump the rest of his belongings on us. It's not our position to take care of or storing them.

Q: Isn't it true he provided the keys to the vehicle and asked that you bring the vehicle to the exchange point?

[Appellant:] He never gave me the keys to his car, no.

Q: Isn't it true that he provided keys during one of the exchanges, whether or not that means you or one of your relatives?

[Appellant:] I have no knowledge of him providing keys at any of the exchanges.

Q: If he were to provide the keys to the vehicle, would you bring that vehicle to him at the exchange?

[Appellant:] No.

Q: But you would admit that that vehicle is his?

. . .

[Appellant:] Yes.

Q: And you raised concerns that his girlfriend is transporting the child?

[Appellant:] I raise concerns that there have been vehicle accidents within the time period that I've known [Appellant's girlfriend], which is probably within the last four months. . . .

Q: So you looked into whether or not there was an accident involving [Appellant's girlfriend]?

[Appellant:] Sure. It's my granddaughter.

Q: And although you have concerns with her driving, and although we've remedied that situation by asking for Mr. Donelly's vehicle back, you chose to retain the vehicle at your property, correct?

[Appellant:] I don't believe it's my position to give [Donelly] anything.

N.T. Emergency Custody Hearing, 9/4/18, at 19-22; N.T. Trial, 8/9-11/21, at 87-91; Commonwealth's Exhibit 3.

As noted above, two weeks after Appellant gave this testimony, Appellant filed the Motion for Involuntary Transfer of Vehicle Ownership in the Butler County Court of Common Pleas.

Donelly testified that after he learned Appellant had involuntarily transferred the ownership of his Jeep to her business, he retained a Butler

County attorney to recover his Jeep. N.T. Trial, 8/9-11/21, at 104. On May 3, 2019, Donelly filed a petition to strike off and open the November 29, 2018 judgment. *Id.* at 180; Commonwealth's Exhibit 5. Within the petition, Donelly claimed that the trial court's order must be opened because the Jeep was not abandoned and Appellant failed to provide proper notice to him of the Motion for Involuntary Transfer of Vehicle Ownership. *See* Donelly's Petition to Open, 5/3/19, at 1-3; Commonwealth's Exhibit 5. "After that proceeding was done, [Judge Yeager of the Butler County Court of Common Pleas] reversed [the November 29, 2018] order and signed the Jeep back over to" Donelly. N.T. Trial, 8/9-11/21, at 273.

The jury found Appellant guilty of three counts of theft by deception and one count of securing the execution of documents by deception. On October 15, 2021, the trial court sentenced Appellant to serve an aggregate term of 18 months of probation, with the following restrictive conditions: Appellant must serve seven days in the Butler County Prison and then serve 90 days of house arrest with electronic monitoring. *See* Sentencing Order, 10/15/21, at 1-3. Specifically, the trial court sentenced Appellant in the following manner: at Count 1 (claiming that Appellant committed theft of the Jeep by deception, under 18 Pa.C.S.A. § 3922(a)(2)), the trial court ordered that Appellant serve the above-quoted sentence; at Count 2 (claiming that Appellant committed theft of the Jeep by deception, under 18 Pa.C.S.A. § 3922(a)(1)), the trial court ordered that Appellant serve "the same sentence" as at Count 1, "to run concurrent" to the sentence imposed at Count 1; at Count 3 (claiming that

Appellant committed theft of the Jeep by deception, under 18 Pa.C.S.A. § 3922(a)(3)), the trial court ordered that Appellant serve "the same" sentence as at Count 2; and, at Count 4 (claiming that Appellant committed the crime of securing the execution of documents by deception, in violation of 18 Pa.C.S.A. § 4114), the trial court ordered that Appellant serve a term of 12 months of probation, to run concurrent to Count 1. **See** Sentencing Order, 10/15/21, at 1-3.

On October 21, 2021, Appellant filed a post-sentence motion, where she claimed that the evidence was insufficient to support her convictions. **See** Appellant's Post-Sentence Motion, 10/21/21, at ¶¶ 1-49. Moreover, on October 25, 2021, the Commonwealth filed a "Motion to Modify Sentence to Include Restitution." **See** Commonwealth's Motion to Modify Sentence, 10/25/21, at 1-2. Within the Commonwealth's motion, the Commonwealth requested that the trial court "amend the sentenc[ing] order to include restitution owed to" Donelly. **Id.** at 1.

On November 1, 2021, the trial court entered an order, which declared that its October 15, 2021 sentencing order was amended "to include restitution to [Donelly] of $1.00." Trial Court Order, 11/1/21, at 1; **see also** 42 Pa.C.S.A. § 5505 ("a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed"). Further, the trial court scheduled a restitution hearing for January 7, 2022. **Id.**

On January 7, 2022, the trial court held the scheduled restitution hearing. During this hearing Donelly testified that he spent $780.40 to re-title the Jeep in his name. N.T. Restitution Hearing, 1/7/22, at 11-12. Further, Donelly testified that his girlfriend, Jamie Wagner, paid a total of $2,445.34 to rent a car for him, during the period from August 15, 2018 until November 6, 2018. *See id.* at 4-12.

On February 14, 2022, the trial court entered an order declaring: "[Appellant] shall as part of [her] sentence and prior to any fines and cost[s] make restitution to [Donelly] in the amount of $780.40 and once that [is] paid in full she shall make restitution to [Donelly] in the amount of $2445.34 so that he may reimburse Jamie Wagner." Trial Court Order, 2/14/22, at 3. The trial court further specified that it was ordering restitution as part of Appellant's direct sentence, in accordance with 18 Pa.C.S.A. § 1106. *Id.* at 1-3. The next day, the trial court denied Appellant's post-sentence motion. Trial Court Order, 2/15/22, at 1.

Appellant filed a timely notice of appeal and simultaneously filed a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Appellant numbers five claims on appeal:

> [1.] Did the Commonwealth adduce[] sufficient evidence to prove Appellant's guilt of 18 [Pa.C.S.A.] § 3922(a)(1)?
>
> [2.] Did the Commonwealth adduce[] sufficient evidence to prove Appellant's guilt of 18 [Pa.C.S.A.] § 3922(a)(2)?

[3.] Did the Commonwealth adduce[] sufficient evidence to prove Appellant's guilt of 18 [Pa.C.S.A.] § 3922(a)(3)?

[4.] Did the Commonwealth adduce[] sufficient evidence to prove Appellant's guilt of 18 [Pa.C.S.A.] § 4114?

[5.] Should the trial court's restitution order include rental car[] fees [not] incurred by Donelly?

Appellant's Brief at 4 (some capitalization omitted).

Appellant's initially claims that the evidence was insufficient to convict her of any of the crimes. We review Appellant's sufficiency of the evidence challenges under the following standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Callen*, 198 A.3d 1149, 1167 (Pa. Super. 2018) (citations and quotation marks omitted).

Appellant's first three claims contend that the evidence was insufficient to convict her of theft by deception. Theft by deception is defined as follows:

> (a) Offense defined.--A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:
>
> (1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise;
>
> (2) prevents another from acquiring information which would affect his judgment of a transaction; or
>
> (3) fails to correct a false impression which the deceiver previously created or reinforced, or which the deceiver knows to be influencing another to whom he stands in a fiduciary or confidential relationship.
>
> (b) Exception.--The term "deceive" does not, however, include falsity as to matters having no pecuniary significance, or puffing by statements unlikely to deceive ordinary persons in the group addressed.

18 Pa.C.S.A. § 3922.

Viewing the evidence in the light most favorable to the Commonwealth, the evidence clearly establishes that Appellant intentionally withheld Donelly's Jeep and then falsely claimed to Judge Yeager that Donelly had abandoned the Jeep on her property, so that Appellant could obtain ownership of Donelly's Jeep. *See* 18 Pa.C.S.A. § 3922(a). Indeed, the evidence demonstrates that Appellant and her family initially blocked Donelly's Jeep on their property and would not allow Donelly to drive his Jeep off of their property. N.T. Trial, 8/9-11/21, at 71-76. Further, two weeks before Appellant filed her Motion for

Involuntary Transfer of Vehicle Ownership, Appellant admitted, in court, that she was withholding Donelly's Jeep at her residence and that, if Donelly wanted to recover his Jeep, Donelly "needs to work to do that" and "settle what he owes before he moved out." N.T. Emergency Custody Hearing, 9/4/18, at 19-22; N.T. Trial, 8/9-11/21, at 87-91; Commonwealth's Exhibit 3. Viewing this evidence in the light most favorable to the Commonwealth, Appellant's testimony demonstrates that Donelly did not abandon his Jeep on her property – but, rather, that Appellant was holding Donelly's Jeep ransom, so that Donelly would pay her money. N.T. Emergency Custody Hearing, 9/4/18, at 19-22

The evidence also demonstrates that Judge Yeager initially granted Appellant's Motion for Involuntary Transfer of Vehicle Ownership, thus transferring ownership of the Jeep from Donelly to Appellant. This evidence proves that Appellant deceived Judge Yeager by intentionally: "creat[ing] or reinforc[ing] a false impression" in Judge Yeager's mind that Donelly had abandoned the Jeep on Appellant's property; preventing Judge Yeager from acquiring information that would demonstrate the Jeep was not abandoned; and, failing to correct the false impression, that Appellant created in Judge

Yeager, that the Jeep was not, in fact, abandoned.[2, 3]  *See* 18 Pa.C.S.A. § 3922(a)(1)-(3).  Appellant's claims to the contrary are meritless and, thus, Appellant's first three claims on appeal fail.

Next, Appellant claims that the evidence was insufficient to establish that she committed the crime of securing the execution of documents by deception.  This crime is defined in the following manner:

> A person commits a misdemeanor of the second degree if by deception he causes another to execute any instrument affecting or purporting to affect or likely to affect the pecuniary interest of any person.

18 Pa.C.S.A. § 4114.

On appeal, Appellant claims that the Commonwealth failed to prove she violated Section 4114 because "it presented no evidence as to any false information Appellant presented to [Judge] Yeager as to be deceptive." Appellant's Brief at 32.

_____

[2] Moreover, since the Jeep has pecuniary value, the exception in Section 3922(b) does not apply.

[3] Appellant claims that, since Judge Yeager did not testify at trial, the Commonwealth could not have proven she committed theft by deception. *See* Appellant's Brief at 11.  Appellant's claim lacks merit because her Motion for Involuntary Transfer of Vehicle Ownership was based solely upon her averment that Donelly abandoned the vehicle on her property.  *See* Appellant's Motion for Involuntary Transfer of Vehicle Ownership, 9/18/18, at 1-2.  Since Judge Yeager could have only granted Appellant's motion on the basis of abandonment – and since the Commonwealth proved that Appellant's claim of abandonment was intentionally false and deceptive – Judge Yeager's testimony was unnecessary to prove Appellant committed the crime of theft by deception.

Appellant's claim fails for the same reasons explained above. In particular, the Commonwealth presented sufficient evidence to establish that Appellant falsely and deceptively averred to Judge Yeager that Donelly had abandoned the Jeep, thus causing Judge Yeager to grant Appellant's Motion for Involuntary Transfer of Vehicle Ownership. Appellant's claim to the contrary fails.

Finally, Appellant claims that the trial court erred when it ordered that she pay restitution to Donelly for "rental car[] fees [not] incurred by Donelly." Appellant's Brief at 4. We conclude that the trial court's entire order of restitution is illegal. Therefore, we must vacate Appellant's judgment of sentence and remand for resentencing.

Our Supreme Court has explained:

> in the criminal context, generally speaking, restitution is the requirement that the criminal offender repay, as a condition of his sentence, the victim or society, in money or services. It is well established that the primary purpose of restitution is rehabilitation of the offender by impressing upon him or her that his [or her] criminal conduct caused the victim's loss or personal injury and that it is his [or her] responsibility to repair the loss or injury as far as possible. Thus, recompense to the victim is only a secondary benefit, as restitution is not an award of damages. Although restitution is penal in nature, it is highly favored in the law and encouraged so that the criminal will understand the egregiousness of his or her conduct, be deterred from repeating the conduct, and be encouraged to live in a responsible way.

***Commonwealth v. Brown***, 981 A.2d 893, 895-896 (Pa. 2009) (footnotes and citations omitted).

- 17 -

In this case, the trial court ordered restitution as a part of Appellant's direct sentence, in accordance with 18 Pa.C.S.A. § 1106. ***See***, ***e.g.***, Trial Court Order, 2/14/21, at 1-3. In relevant part, Section 1106 reads:

> (a) General rule.--Upon conviction for any crime wherein:
>
> > (1) property of a victim has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime; or
> >
> > (2) the victim, if an individual, suffered personal injury directly resulting from the crime,
>
> the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.
>
> . . .
>
> (c) Mandatory restitution.—
>
> > (1) The court shall order full restitution:
> >
> > > (i) Regardless of the current financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss. . . .
> >
> > . . .
> >
> > (2) At the time of sentencing the court shall specify the amount and method of restitution. . . .
> >
> > . . .
> >
> > (4)(i) It shall be the responsibility of the district attorneys of the respective counties to make a recommendation to the court at or prior to the time of sentencing as to the amount of restitution to be ordered. This recommendation shall be based upon information solicited by the district attorney and received from the victim.

18 Pa.C.S.A. § 1106.

In discerning the nature of a challenge to the imposition of restitution, we have held:

> the appellate courts have drawn a distinction between those cases where the challenge is directed to the trial court's [statutory] authority to impose restitution and those cases where the challenge is premised upon a claim that the restitution order is excessive. When the court's authority to impose restitution is challenged, it concerns the legality of the sentence; however, when the challenge is based on excessiveness, it concerns the discretionary aspects of the sentence.

*Commonwealth v. Oree*, 911 A.2d 169, 173 (Pa. Super. 2006); *see also In re M.W.*, 725 A.2d 729, 731 (Pa. 1999) (holding that, when an issue "centers upon [the court's] statutory authority" to impose the sentence, as opposed to the "court's exercise of discretion in fashioning" the sentence, the issue implicates the legality of the sentence); *Commonwealth v. Walker*, 666 A.2d 301, 307 (Pa. Super. 1995) ("challenges alleging that a sentence of restitution is excessive under the circumstances have been held by this court to be challenges to the discretionary aspects of sentencing"); *Commonwealth v. Weir*, 239 A.3d 25, 37 (Pa. 2020) ("the failure of a trial court to impose restitution where the circumstances described in Section 1106(a)(1) or (2) are established results in an illegal sentence. Conversely, . . . if the statutory circumstances are not established and the sentencing court orders restitution, the challenge to the sentence implicates its legality").

"Legality of sentence questions are not waivable and may be raised *sua sponte* [on direct review] by this Court." *Commonwealth v. Watley*, 81

A.3d 108, 118 (Pa. Super. 2013) (*en banc*). A question concerning the legality of a sentence, "presents a pure question of law." ***Commonwealth v. Petrick***, 217 A.3d 1217, 1224 (Pa. 2019). Thus, "our scope of review [over such a claim] is plenary and our standard of review *de novo*." ***Id.***

The trial court ordered that Appellant pay restitution as a part of her direct sentence, in accordance with 18 Pa.C.S.A. § 1106. Trial Court Order, 2/14/22, at 1-3. However, Section 1106(c)(2) demands that the trial court "specify the amount and method of restitution" **at the time of sentencing**. ***See*** 18 Pa.C.S.A. § 1106(c)(2). The trial court did not do so here. Instead, as explained above, on October 15, 2021, the trial court sentenced Appellant to serve an aggregate term of 18 months of probation, with restrictive conditions. Thus, the trial court did not order Appellant to pay any restitution at the initial sentencing. ***See*** Sentencing Order, 10/15/21, at 1-3. Ten days later, the Commonwealth filed a "Motion to Modify Sentence to Include Restitution" and requested that the trial court "amend the sentenc[ing] order to include restitution owed to" Donelly. ***See*** Commonwealth's Motion to Modify Sentence, 10/25/21, at 1.

On November 1, 2021, the trial court entered an order, which declared that its October 15, 2021 sentencing order was amended "to include restitution to [Donelly] of $1.00." Trial Court Order, 11/1/21, at 1. The trial court also scheduled a restitution hearing for January 7, 2022. ***Id.*** Following the restitution hearing – and three months after the trial court entered its amended sentencing order in the matter – the trial court entered an order

declaring: "[Appellant] shall as part of [her] sentence and prior to any fines and cost[s] make restitution to [Donelly] in the amount of $780.40 and once that [is] paid in full she shall make restitution to [Donelly] in the amount of $2445.34 so that he may reimburse Jamie Wagner." Trial Court Order, 2/14/22, at 3. Within its order, the trial court specified that it was ordering restitution as part of Appellant's direct sentence, pursuant to 18 Pa.C.S.A. § 1106. *Id.* at 1-3.

As this Court has held, where a trial court orders a defendant to pay restitution as a direct sentence under Section 1106, the trial court must "specify the amount and method of restitution" **at the time of sentencing**. *See* 18 Pa.C.S.A. § 1106(c)(2). The trial court may not sentence a defendant to pay restitution "in an amount to be determined later." Indeed, this Court has held that "an order of restitution to be determined later is *ipso facto* illegal." ***Commonwealth v. Mariani***, 869 A.2d 484, 487 (Pa. Super. 2005).

In this case, the trial court's amended sentencing order declared that Appellant was required to pay restitution to Donelly in the amount of $1.00. However, this amount was not a *bona fide* placeholder, as the amount bore no relationship to the record evidence of Donelly's property damages and the nominal restitution amount was substantively akin to an order declaring that Appellant pay restitution "in an amount to be determined later." Therefore, Appellant's sentence is illegal. Certainly, as this Court explained in ***Mariani***:

> Section [1106(c)(2)] . . . has two, inextricable components: the time at which a restitution sentence must be imposed, that is, at the sentencing hearing; and the specific nature of

such a sentence, that is, definite as to amount and method of payment. Thus it is not the order entered after the delayed restitution proceeding which rendered the restitution sentence illegal, but the order "restitution to be determined," which, entered from the bench at sentencing, failed in both respects to meet the criteria of the statute.

*Id.* at 486-487 (citations omitted); *see also Commonwealth v. Gentry*, 101 A.3d 813, 818 (Pa. Super. 2014) (holding: where "the trial court imposed a restitution order of $1.00 as an interim value for [p]robation to determine at a later date," the trial court's sentence was illegal); *Commonwealth v. Dinoia*, 801 A.2d 1254, 1255 (Pa. Super. 2002) ("a sentencing court may not leave the amount of restitution open for determination at a later date"); *Commonwealth v. Smith*, 956 A.2d 1029, 1033 (Pa. Super. 2008) ("[c]onsistent with the plain language of § 1106(c)(2), our [c]ourts have held that the trial court may not impose a general order of restitution at sentencing and then 'work out the details' and amounts at a later date").

Since the trial court's "original restitution order was itself illegal[,] . . . there was no valid restitution for the trial court to amend" in February 2022. *Gentry*, 101 A.3d at 819; *see also Mariani*, 869 A.2d at 486-487 ("it is not the order entered after the delayed restitution proceeding which rendered the restitution sentence illegal, but the order 'restitution to be determined,' which, entered from the bench at sentencing, failed in both respects to meet the criteria of the statute") (citations omitted). Further, since the trial court's amended sentencing order contained both a probationary sentence and a restitution component, our disposition has potentially altered the trial court's sentencing scheme. Therefore, we must vacate Appellant's entire judgment

of sentence and remand for resentencing. ***See Commonwealth v. Deshong***, 850 A.2d 712, 716-717 (Pa. Super. 2004) ("without the restitution, we are not confident that the trial court would have imposed probation. Therefore, because the sentencing scheme has been upset, we vacate the entire sentence and remand for complete resentencing"); ***see also Mariani***, 869 A.2d at 487 ("[b]ecause the sentence here was an integrated one intended from the outset to consist of both confinement and monetary elements, and because both were not imposed contemporaneously, the illegality of one part invalidates the whole").[4]

Finally, we note that the case at bar falls outside our Supreme Court's recent ruling in ***Commonwealth v. Cochran***, 244 A.3d 413 (Pa. 2021). In that case, Cochran assaulted his grandmother and caused damage to his grandparents' property. As a result, on June 29, 2017, Cochran pleaded guilty to various crimes, including simple assault and criminal mischief. ***Id.*** at 415.

During the plea hearing, Cochran and the Commonwealth agreed that restitution exceeded $65,000.00, but Cochran disputed the total amount of restitution. Thus, during the plea hearing, defense counsel requested a

_____

[4] The trial court sentenced Appellant to serve 18 months of probation at Count 1, for committing theft of the Jeep by deception. The trial court then sentenced Appellant to serve concurrent terms of probation at Counts 2 and 3, for committing theft of the same Jeep by deception. ***See*** Sentencing Order, 10/15/21, at 1-3. We note that the trial court's sentence at Counts 2 and 3 also renders Appellant's sentence illegal, as Appellant "may receive but one sentence on the theft offense." ***Commonwealth v. Shaffer***, 420 A.2d 722, 727 n.2 (Pa. Super. 1980); 18 Pa.C.S.A. § 3902 ("[c]onduct denominated theft in this chapter constitutes a single offense").

further hearing to determine the proper amount of restitution. The trial court granted Cochran's request, accepted his guilty plea, and, that day, sentenced Cochran to serve a term of three to 23 months in jail. The trial court's "June 29, 2017 order included a provision scheduling the requested restitution hearing for August 28, 2017." *Id.*

The trial court held the first half of the restitution hearing on August 28, 2017 and the second half of the hearing on September 15, 2017. At the conclusion of the hearing, the trial court ordered Cochran to pay restitution in the approximate amount of $71,000.00. *Id.* at 416.

On appeal, Cochran claimed that the trial court did not have jurisdiction to "enter a restitution order or amend the sentencing order because more than 30 days had passed since the June 29, 2017 order." *Id.* Our Supreme Court disagreed, reasoning that "the sentencing court proceeded with a segmented or bifurcated sentencing hearing, resulting in a complete and final order only on September 15, 2017." *Id.* at 421. The *Cochran* Court explained:

> the "time of sentencing" in this case [did not occur] solely on June 29, 2017, after the trial court accepted [Cochran's] plea and the terms of the plea agreement. . . . The circumstances of this particular case are unique in that defense counsel at the time of sentencing agreed to proceed with sentencing but disputed the restitution amount and requested an additional hearing. There is nothing in the Rules of Criminal Procedure or the Judicial Code that precludes a sentencing court from conducting a sentencing proceeding over multiple days as the needs of the parties and the court's schedule may necessitate. Accordingly, the trial court announced the incarceration portion of the sentence with other conditions in an order dated June 29, 2017. In response to [Cochran's] request, the order included setting a date for a further

> hearing on August 28, 2017 to address certain factual issues about the ownership of the damaged property included in the Commonwealth's valuation of restitution. On this record, it is apparent the sentencing court proceeded with a segmented or bifurcated sentencing hearing, resulting in a complete and final order only on September 15, 2017.

*Id.* at 420-421 (citations and footnotes omitted).

The case at bar is not controlled by **Cochran**. Here, the trial court initially sentenced Appellant on October 15, 2021 to serve a term of probation. The trial court included no restitution component in its initial sentence. **See** Sentencing Order, 10/15/21, at 1-3. The Commonwealth then filed a timely post-sentence motion and requested that the trial court "amend the sentenc[ing] order to include restitution owed to" Donelly. Commonwealth's Motion to Modify Sentence, 10/25/21, at 1-2. In response to the Commonwealth's request (and without Appellant's consent), the trial court entered an amended sentencing order on November 1, 2021, which declared that its October 15, 2021 sentencing order was amended "to include restitution to [Donelly] of $1.00" and scheduled a restitution hearing for January 7, 2022. Trial Court Order, 11/1/21, at 1; **see also** 42 Pa.C.S.A. § 5505 ("a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed").

The trial court held the restitution hearing and, on February 14, 2022, the trial court entered an order declaring: "[Appellant] shall as part of [her] sentence and prior to any fines and cost[s] make restitution to [Donelly] in the amount of $780.40 and once that [is] paid in full she shall make restitution

to [Donelly] in the amount of $2445.34 so that he may reimburse Jamie Wagner." Trial Court Order, 2/14/22, at 3.

The case at bar is thus very different from **Cochran**. At the outset, during the first day of sentencing in **Cochran**, Cochran agreed that he would have to pay more than $65,000.00 in restitution, but disagreed as to the total amount of restitution owed and specifically requested that the trial court schedule a further hearing to determine the final amount of restitution. **Cochran**, 244 A.3d at 415. Here, however, restitution was not requested, ordered, or even contemplated at Appellant's initial sentencing hearing. **See** Sentencing Order, 10/15/21, at 1-3. Further, in the case at bar, the initial request for a restitution hearing came at the behest of the Commonwealth – not Appellant – and occurred ten days after Appellant's sentencing hearing. There is also no evidence that Appellant consented to the trial court's stated procedure to hold a separate restitution hearing before it was ordered. **See Cochran**, 244 A.3d at 420-421 (declaring that the circumstances of **Cochran** "are unique" and support the conclusion that "the sentencing court proceeded with a segmented or bifurcated sentencing hearing" because "**defense counsel at the time of sentencing agreed to proceed with sentencing but disputed the restitution amount and requested an additional hearing**") (emphasis added); **see also Commonwealth v. McCabe**, 265 A.3d 1279 (Pa. 2021) (Wecht, J., concurring) (in a concurrence, Justice Wecht noted that the facts of the **McCabe** case support the conclusion that the sentencing hearing was bifurcated because "**McCabe consented** to the

unique, bifurcated restitution procedure") (emphasis added); *Commonwealth v. Laur*, ___ A.3d ___, 2023 WL 2880119 (Pa. Super. 2023), at \*2 n.3 (citing *Cochran* and holding: "[b]ecause [the defendant] **expressly consented** to the trial court holding a separate restitution hearing subsequent to its imposition of his sentence of probation, this was a lawful bifurcated sentencing proceeding and [the defendant's] sentence became final when the last part of the sentence, the restitution order, was imposed") (emphasis added).

Second, in *Cochran*, the trial court's initial sentencing order "included a provision scheduling the requested restitution hearing for" a specific date – thus further demonstrating that the trial court intended for a "segmented or bifurcated sentencing hearing." *See Cochran*, 244 A.3d at 420-421. This differs from the case at bar in that, here, the trial court did not indicate any intention to bifurcate the sentencing hearing in the initial sentencing order. It was only in response to the Commonwealth's post-sentence request for restitution that the trial court amended the original sentencing order to include the illegal term that Appellant pay $1.00 in restitution and schedule a separate restitution hearing for a later date.[5]

---

[5] Justice Wecht dissented in *Cochran* and explained his belief that "the trial court lacked jurisdiction to impose restitution" in that case. *Cochran*, 244 A.3d at 422 (Wecht, J., dissenting). Justice Wecht noted that, when Cochran initially appealed to the Superior Court, we held that Cochran's sentence was illegal because "the trial court improperly ordered restitution after the time of sentencing, in violation of Section 1106(c)(2)'s plain language." *Id.* at 423
*(Footnote Continued Next Page)*

The facts of the case at bar thus fall outside of **Cochran's** holding. As such, **Cochran** does not sanction the procedure that occurred in this case.

---

(Wecht, J., dissenting) (emphasis and quotation marks omitted). He further noted that, to correct this error, we vacated not just the restitution component of the sentence, but the entire judgment of sentence. **Id.** (Wecht, J., dissenting).

According to Justice Wecht, this Court erred in **Cochran** when we vacated the entire judgment of sentence, as "nothing about Cochran's **sentence** was illegal." **Id.** at 424 (Wecht, J., dissenting) (emphasis in original). According to Justice Wecht, we should have simply vacated the order of restitution, since the trial court "plainly lacked jurisdiction to alter the judgment of sentence in any manner more than thirty days beyond the date of its imposition." **Id.** (Wecht, J., dissenting). Justice Wecht argued that, by vacating the entire judgment of sentence, we "essentially provid[ed] the trial court with a mulligan." **Id.** at 423 (Wecht, J., dissenting).

The case at bar differs from Justice Wecht's view of **Cochran** in that, here, the trial court had **jurisdiction** to amend the initial sentencing order and include restitution. **See** 42 Pa.C.S.A. § 5505 ("a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed"). Further, where Justice Wecht believed "nothing about Cochran's **sentence** was illegal," in the case at bar, the trial court's amended sentencing order **contained an illegal component**, as the $1.00 order of restitution was not a *bona fide* placeholder and was substantively akin to an order declaring that Appellant pay restitution "in an amount to be determined later." **Cochran**, 244 A.3d at 424 (Wecht, J., dissenting) (emphasis in original); **see also supra** at **21-23. Thus, since the amended sentencing order in the case at bar was integrated and contained both a probationary term and a restitution component, we are required to vacate Appellant's entire judgment of sentence and remand for resentencing, as "the illegality of one part invalidates the whole." **Mariani**, 869 A.2d at 487.

We must therefore vacate Appellant's judgment of sentence and remand for resentencing.[6]

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

---

[6] On remand, the trial court should consider whether it is appropriate to impose restitution as a condition of Appellant's probation, in accordance with 42 Pa.C.S.A. § 9763(b)(10). As the Pennsylvania Supreme Court explained:

> In the context of a criminal case, restitution may be imposed either as a direct sentence, 18 Pa.C.S. § 1106(a), or as a condition of probation, 42 Pa.C.S. § [9763]. When imposed as a sentence, the injury to property or person for which restitution is ordered must directly result from the crime. However, when restitution is ordered as a condition of probation, the sentencing court is accorded the latitude to fashion probationary conditions designed to rehabilitate the defendant and provide some measure of redress to the victim. As [the Pennsylvania Supreme Court] stated in *Harner*:
>
> > Such sentences [of ordering restitution as a condition of probation] are encouraged and give the trial court the flexibility to determine all the direct and indirect damages caused by a defendant and then permit the court to order restitution so that the defendant will understand the egregiousness of his conduct, be deterred from repeating this conduct, and be encouraged to live in a responsible way.
>
> *Harner*, 617 A.2d at 707.
>
> Thus, the requirement of a nexus between the damage and the offense is relaxed where restitution is ordered as a condition of probation.

*In re M.W.*, 725 A.2d at 732 (footnotes and some citations omitted).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  6/12/2023