20025 PA Super 16

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KENNETH EUGENE RAPP | : | |
| | : | |
| Appellant | : | No. 814 WDA 2023 |

Appeal from the Judgment of Sentence Entered May 30, 2023
In the Court of Common Pleas of Warren County Criminal Division at
No(s):  CP-62-CR-0000486-2021

BEFORE:  BOWES, J., BECK, J., and BENDER, P.J.E.

OPINION BY BECK, J.:                              **FILED: January 24, 2025**

Kenneth Eugene Rapp appeals from the judgment of sentence imposed following his guilty plea to one count of theft by unlawful taking.[1]  His issues all relate to the validity of a May 30, 2023 order amending his restitution.  We affirm.

Rapp does not contest the basic facts underlying the crime, and we therefore set forth the factual history as derived from the testimony from the restitution hearing and other material from the certified record.

The Commonwealth charged Rapp with stealing natural gas from the victim, Emkey Gathering, LLC ("Emkey").  Kyle Rhoades ("Rhoades"), the president of Emkey, was offered as an expert witness and explained that the company "collect[s] third party gas from other producers" and then "move[s]

---

[1] 18 Pa.C.S. § 3921(a).

it through [their] pipeline systems," conditioning the gas and then "compressing it for deliveries into ... distribution systems" owned by other third parties. N.T., 5/30/2023, at 12. Rhoades explained that meters installed along the pipelines collect data, which allows the company to "account[] for the gas in and then the gas out and then the difference." *Id.* at 17. If the records indicate a "large negative difference, we assume that's a gas loss" and they investigate to determine if the loss is due to a leak, calibration errors, or some other issue. *Id.*

In 2021, Emkey identified a gas loss and investigated by conducting "pressure test[s]" on certain sections of the line by shutting off the incoming gas. *Id.* at 19. The company "started out near Edinboro ... and worked our way east." *Id.* Eventually, they reached a section where "[t]he pressure started dropping immediately" upon isolating the pipeline, indicating a leak. *Id.* Workers physically inspected the area and did not see any signs of a leak, but did hear "gas flow noise ... and [saw] a potentially suspicious ditch line from our pipeline to a valve set that Emkey didn't own." *Id.* at 20. The company contacted the Pennsylvania State Police and coordinated an excavation with the authorities. *Id.* Emkey then discovered an underground tap, which was removed. *Id.* Rhoades testified that the tap was a device welded onto the pipeline which diverted gas from the main pipeline. *Id.* at 19. Emkey paid a contractor to "dig up the tap and then ultimately remove the section of pipe," followed by replacing that section with new pipe. *Id*. at

22. After this work was completed, the data captured from the pipeline showed that the gas loss along that section "dropped significantly." *Id.* at 23. Rhoades reviewed the company records and prepared a summary of the estimated gas loss, which he calculated as "1.6 million and some change" for the period spanning October 2008 through August of 2021. *Id.* at 27.

Rapp was charged with theft by unlawful taking and receipt of stolen property, both graded as felonies of the first degree, as well as felonious criminal mischief. The case was scheduled for jury selection on November 15, 2022, with trial to commence on February 10, 2023. Right before jury selection was to begin, Rapp accepted a negotiated guilty plea whereby the Commonwealth amended the theft by unlawful taking charge to a misdemeanor of the first degree and withdrew the remaining two counts. During the plea, Rapp confirmed that he understood he was charged with "tak[ing] or exercis[ing] unlawful control over natural gas belonging to Emkey" from October 31, 2008, through August 26, 2021. N.T., 11/15/2022 at 10.

The parties did not agree to a sentence. The Commonwealth stated it would not object to a period of probation and informed the court that there would be "a restitution hearing in the future on this case." *Id.* at 3. Rapp agreed. The parties agreed to hold the restitution hearing on February 10, 2023, since that date had already been reserved for the jury trial. *Id.* at 11.

The parties appeared on December 9, 2022, for sentencing.[2] Rapp informed the court that a restitution summary prepared in connection with the presentence investigation listed the amount at approximately $1,700,000. He added: "As of this date we are filing a motion for a hearing on that restitution, and I believe the Commonwealth and I are both agreeable that this is still undetermined." N.T., 12/9/2022, at 6. The Commonwealth replied that it "would ... be asking for restitution ... in the amount of $1,703,549.57." *Id.* The trial court imposed a period of five years of probation. With respect to restitution, the court stated: "[I]t may take some experts, a lot of reports, a lot of calculations to determine the exact amount of loss, but for today's purposes I have to set it at the maximum, or the full amount I should say, and subject to any changes by agreement or restitution hearing." *Id.* at 7. Rapp did not object. The court docketed a written sentencing order on December 12, 2022, setting restitution at the amount requested by the Commonwealth.

Rapp filed a motion the next day, which he titled as a motion to modify his sentence, requesting a "further hearing on the matter to determine the appropriate restitution." Motion to Modify Sentence, 12/13/2022, at 1

_____

[2] The transcript states that the date was for "sentencing court" and the trial judge directed the prosecutor "to call all of the [d]efendants forward so I can advise them of their post[-]sentence rights[.]" N.T., 12/9/2022, at 2. It therefore appears that Warren County schedules several defendants for sentencing on the same date.

(unnumbered). The motion represented that the "Commonwealth does not object to a hearing on restitution." *Id.* (emphasis and capitalization omitted).

The trial court held the restitution hearing on May 30, 2023, where Rhoades testified to the losses suffered by the company, as previously recounted. Rapp offered competing testimony from Scott Sampson, the owner and president of Chautauqua Energy Management. Sampson marketed gas produced by Bear Lake Energy, a gas company owned by Rapp. He opined that "it doesn't make any sense" that it took over a decade for Emkey to notice the gas loss. N.T., 5/30/2023, at 82. The trial court curtailed this line of questioning, saying that by pleading guilty Rapp admitted to tapping into the system over the entire timespan and directed Rapp to offer testimony "connected to the amount of gas" that was stolen. *Id.* at 83. Sampson thereafter explained that he disagreed with Rhoades' methodology. *Id.* at 97. On cross-examination, he admitted that he had not reviewed Rhoades' documentation. *Id.* at 99. At the close of the hearing the trial court entered an order granting the post-sentence motion in part, modifying the restitution amount to $255,404.32. The order explained this amount was "intended to cover the losses suffered by the victim from October 24, 2018 ... until August 26, 2021, the last date of the criminal activity." Order, 5/31/2023.[3]

_____

[3] The trial court explained that restitution was limited to that timeframe because the victim was a limited liability corporation. The restitution statute, 18 Pa.C.S. § 1106, was amended effective October 24, 2018, to explicitly
*(Footnote Continued Next Page)*

Rapp filed a timely notice of appeal from that order and filed a Rule 1925(b) concise statement as ordered by the trial court. Rapp listed four issues, raising various points of error. The trial court filed an opinion in response, distilling the issues to two general claims. First, that it "erred and abused its discretion by ordering a restitution amount based upon speculation," and second, that the court "erred and abused its discretion by assuming facts not in evidence related to whether [Rapp] sold any gas." Trial Court Opinion, 7/24/2023, at 4. Rapp now raises three issues on appeal.

> I. Whether the May 30, 2023 [t]rial [c]ourt order should be vacated as a judicial nullity for lack of compliance with Pa.R.Crim.P. 720(B)(3)(a)?
>
> II. Whether the December 9, 2022 [o]rder of [r]estitution in the amount of $1,703,549 was illegal?
>
> III. Whether the restitution amount ordered on May 30, 2023, was speculative or otherwise unsupported by the record?

Rapp's Brief at 11 (reordered for ease of disposition).

We address the first two issues together as they present related issues. Rapp maintains that the trial court lacked jurisdiction to grant his post-sentence motion for relief and amend his judgment of sentence. *Id.* at 21-

---

include businesses as victims for purposes of restitution. ***See Commonwealth v. Hunt***, 220 A.3d 582, 587 (Pa. Super. 2019) (holding that this amendment did not apply retroactively where all relevant dates predated its effective date). The trial court raised ***Hunt*** sua sponte at the outset of the hearing but noted in its opinion that it may be lawful to apply the statute where the criminal conduct commenced prior to the amendment and continued after its amendment. Trial Court Opinion, 7/24/2023, at 3 n.6. The Commonwealth does not claim that the trial court erred in this regard, and we therefore express no opinion on this question.

- 6 -

28. On that basis, Rapp argues that the May 30, 2023 order must be vacated as void ab initio. *Id.* at 28. In turn, this would restore the December 9, 2022 order, which Rapp assails as illegal with respect to the restitution amount since the transcript establishes that the trial court acknowledged that further proceedings were necessary to determine the exact amount. *Id.*

When a post-sentence motion is filed, Rule of Criminal Procedure 720(B)(3)(a) dictates that the court must decide the motion within 120 days. Thus, if the motion filed on December 12, 2022 was in fact a post-sentence motion, it had to be decided by April 11, 2023.[4] The clerk of courts failed to enter an order on that date denying the order by operation of law as required by Rule 720(B)(3)(c), and the trial court disposed of the motion 169 days after it was filed. This Court issued a rule to show cause on September 15, 2023, directing the trial court and parties to address why this Court should not vacate the order granting the motion in part and the amended judgment of sentence as nullities and order reinstatement of the December sentence.

The Commonwealth replied that our order "speaks for itself." Commonwealth's Response, 9/22/23, at 1 (unnumbered). The trial court likewise agreed that a remand for reinstatement of sentence was appropriate, concluding in its initial response that it lacked jurisdiction to grant the post-

---

[4] The trial court may enter a one-time extension of thirty days upon good cause shown by the defendant. Rapp did not seek that extension. In any event, the trial court's order was entered more than 150 days after the motion was filed.

- 7 -

sentence motion and adjust the restitution amount. Trial Court Response, 9/20/2023, at 1 (unnumbered). The trial court subsequently filed a supplemental response, asserting that circumstances warranted a finding that there was a breakdown in court operations such that we may consider the order as if validly entered in a timely fashion. Trial Court Response, 9/25/2023, at 2 (unnumbered). Rapp responded with a motion to remand for the entry of an order denying the post-sentence motion by operation of law so that he can file a timely appeal from that order. This Court discharged the rule to show cause and deferred the matter, including the motion for remand, to this panel for consideration. Order, 2/16/2024.

Rapp's brief abandons his request for remand and argues that he is entitled to resentencing. He adopts his prior argument that the orders granting the post-sentence motion and amending his restitution must be vacated as legal nullities. However, whereas he formerly asked for a remand to the trial court for entry of an order denying the post-sentence motion, he now urges the Court to accept that a breakdown occurred and treat the notice of appeal as if filed from the December 9, 2022 judgment of sentence. Rapp's Brief at 28. Rapp submits that we should then vacate that judgment of sentence as illegal, since the trial court acknowledged that a hearing was needed to determine the exact amount owed. *Id.* at 32.

Upon review of the parties' positions, we conclude that our Supreme Court's decision in *Commonwealth v. Cochran,* 244 A.3d 413 (Pa. 2021),

which held that bifurcated sentencing procedures are lawful, is controlling.  In *Cochran*, Steven Cochran caused significant damage to a home owned by his grandparents and was charged with several crimes.  *Id.* at 415.  Cochran eventually accepted a plea agreement on June 29, 2017.  *Id.*  At the plea hearing, the parties "informed the trial court that the total restitution claimed exceeded $65,000.00, but that [Cochran] disputed whether he was responsible for that total amount because some of the destroyed or damaged property had belonged to him."  *Id.*  Cochran "requested a hearing be scheduled to determine the proper restitution amount."  *Id.*  The trial court accepted the plea and imposed a period of incarceration, but did not order any restitution.  *Id.*  The sentencing order did, however, include "a provision scheduling the requested restitution hearing for August 28, 2017."  *Id.*  The day after sentencing, Cochran filed a written motion seeking a restitution hearing.  *Id.*

The parties appeared as scheduled, and Cochran objected to the trial court's jurisdiction to amend the sentence since more than thirty days had elapsed from the time of sentencing.  *Id.* at 416.  The trial court overruled the objection and, after two hearings spread out over several months, set restitution.  *Id.* On appeal, this Court held that the trial court erred by not setting restitution at the time of sentencing, *id.*, and that the subsequent attempts to modify that sentence were illegal since more than thirty days had elapsed.  *See* 42 Pa.C.S. § 5505 (establishing general rule that trial court

loses jurisdiction to modify orders after thirty days). We rejected Cochran's argument that the proper remedy was to strike the restitution order while leaving the other portions of his sentence intact. Instead, we vacated the judgment of sentence and remanded for resentencing. *See id.*

The Supreme Court granted allowance of appeal to address the broader practice of setting "placeholder" restitution amounts and, more specifically, whether the Superior Court panel erred in vacating the sentence as opposed to striking the restitution order. *Id.* Our High Court ultimately decided the case on a different basis:

> The circumstances of this particular case are unique in that defense counsel at the time of sentencing agreed to proceed with sentencing but disputed the restitution amount and requested an additional hearing. There is nothing in the Rules of Criminal Procedure or the Judicial Code that precludes a sentencing court from conducting a sentencing proceeding over multiple days as the needs of the parties and the court's schedule may necessitate. Accordingly, the trial court announced the incarceration portion of the sentence with other conditions in an order dated June 29, 2017. In response to [Cochran]'s request, the order included setting a date for a further hearing on August 28, 2017 to address certain factual issues about the ownership of the damaged property included in the Commonwealth's valuation of restitution. On this record, it is apparent the sentencing court proceeded with a segmented or bifurcated sentencing hearing, resulting in a complete and final order only on September 15, 2017. Viewed in this manner, the sentence is compliant with Section 1106 and the issues raised by [Cochran] and addressed by the Superior Court moot.

*Id.* at 420–21 (footnotes and citations omitted).

Applying *Cochran*, the December 9 order of sentence was interlocutory in nature as the parties consented to a bifurcated sentencing procedure, which

- 10 -

the trial court completed on May 30, 2023. The order that resulted was the final judgment of sentence, from which Rapp timely appealed. The key issue, as discussed in *Cochran*, is whether the parties intended to bifurcate the sentencing process. Here, as in *Cochran*, we find that the parties clearly intended to proceed with the non-restitution component of sentencing and deferred finalizing the restitution amount to a later date. *Cf. Commonwealth v. Dahl*, 296 A.3d 1242, 1256 (Pa. Super. 2023) (declining to apply *Cochran* as "restitution was not requested, ordered, or even contemplated" at the sentencing hearing).

We acknowledge that, unlike the trial court in *Cochran*, the trial court in the case at bar imposed a placeholder restitution amount at the initial sentencing hearing*.* In light of the parties' clear intent to bifurcate the restitution hearing, however, this does not compel a different result.

The record reflects that at the December sentencing, Rapp stated, without any contrary response by the prosecutor, that restitution "is still undetermined." N.T., 12/9/2022, at 6. Likewise, in his motion filed after the December 9 proceeding, Rapp stated that the Commonwealth consented to a restitution hearing "to determine the appropriate restitution," which did not prompt any correction or comment by the Commonwealth. Motion to Modify Sentence, 12/13/2022 at 1 (unnumbered). Finally, the trial court expressly stated at the December 9 hearing that it was setting the restitution amount "at the maximum, or the full amount," solely "[f]or today's purposes," and

that restitution was "subject to any changes by agreement or restitution hearing." N.T., 12/9/2022, at 7. Thus, the trial court simply set the restitution at the full amount the Commonwealth intended to seek at the later hearing as a placeholder and without considering whether the Commonwealth's evidence supported that amount until the subsequently scheduled hearing.[5]

Accordingly, as in *Cochran*, we find that the record establishes that the sentencing order issued in December was not the final sentencing order and sentencing was incomplete on that date. The parties intended only to impose the non-restitution component of Rapp's sentence at the December proceeding, with the amount of restitution to be determined at a hearing at a later date. Regarding Rapp's self-styled motion for post-sentence relief, we conclude that, notwithstanding the label, the motion was simply intended to schedule the restitution hearing. *See Cochran*, 244 A.3d at 422 (Saylor, C.J.,

---

[5] We note that the Commonwealth briefly suggests that restitution was, in fact, finalized at the December proceeding because the trial court remarked, at the close of the proceeding, "You'll pay restitution to EmKey … in the amount of $1,703,549.74 with the understanding that we most likely will have a restitution hearing regarding that." N.T., 12/9/2022, at 8. The Commonwealth asserts that this conditional statement establishes that a restitution hearing was not certain. Commonwealth's Brief at 20 (arguing that the trial court "indicated a restitution hearing was likely, as opposed [to] [Rapp]'s claim that the trial court would conduct a hearing") (emphases omitted). Therefore, the sentence became final thirty days later. As discussed herein, the Commonwealth's contention is unsupported by the record. Instead, in context, the trial court's reference to a hearing "most likely" taking place in the future was addressed to the possibility that the amount would be changed "by agreement," i.e., a number that was acceptable to both parties without the need for a hearing. *Id.* at 7.

concurring) ("it was clear to all that the 'Sentence Order' of June 29, 2017, was intended to be interlocutory"). In fact, the characterization of the motion as a motion to "reconsider" the restitution component of the sentence is illogical, as it requested a hearing to determine the "appropriate" amount of restitution, with the Commonwealth's consent. Motion to Modify Sentence, 12/13/2022 at 1 (unnumbered). It is also incompatible with the May proceeding, which focused on the Commonwealth's presentation of evidence to validate its request for the restitution amount announced at the December proceeding. At no point did the Commonwealth indicate at the hearing that the purpose of the hearing was to adjust or otherwise modify an amount previously entered. Therefore, we conclude that the December 9, 2022 order was interlocutory, and judgment of sentence was not finalized until May 30, 2023. Accordingly, Rapp's appeal was properly taken from that order.[6]

Therefore, the only remaining claim before us for decision is the reordered third issue, wherein Rapp claims that the amount imposed in the May 30, 2023 restitution order was speculative or otherwise unsupported by the record. Rapp's Brief at 28-29.

Rapp limits his challenge to the legality of the restitution sentence, not its discretionary aspects. *See generally Commonwealth v. Weir*, 239 A.3d 25, 38 (Pa. 2020) (explaining that a challenge to the amount of restitution

---

[6] We have amended the caption accordingly.

generally goes to the discretionary aspects). Rapp claims that "[t]he restitution … was speculative and unsupported by the record, and should therefore be overturned by this Court." Rapp's Brief at 29 (citing *Commonwealth v. Rush*, 909 A.2d 805, 810 (Pa. Super. 2006)). Specifically, he contends that the requisite link between the crime committed and the loss of gas as a result is absent. *Id.* at 29-30.

This challenge is meritless. "The plain language of Section 1106(a) makes clear … that a sentencing court is required to impose restitution as a sentence upon conviction of a crime when the victim's property has been 'substantially decreased in value as a direct result of the crime.'" *Weir*, 239 A.3d at 37 (quoting 18 Pa.C.S. § 1106(a)). In arguing this link between crime and decrease in value is absent, Rapp relies on case law, such as *Rush*, holding that restitution cannot be based on sheer speculation. Cases in which a restitution award is deemed illegal as speculative, typically arise when the crime has no obvious connection to the restitution. Rapp's reliance on this general principle, as stated by *Rush*, is inapt since the legal principle there addresses cases in which the Commonwealth seeks to link uncharged conduct to a loss suffered by the victim. *See, e.g., Commonwealth v. Warunek*, 279 A.3d 52, 55 (Pa. Super. 2022) (vacating restitution for injuries suffered in a car crash where defendant pleaded guilty to leaving scene of accident because the crime at issue attached liability for leaving the scene and did not depend upon the results of the accident); *Commonwealth v. Muhammed*,

219 A.3d 1207, 1213 (Pa., Super. 2019) (vacating restitution award for stolen and damaged property where defendant pleaded guilty to criminal trespass and Commonwealth withdrew theft charges); **Commonwealth v. Zrncic**, 167 A.3d 149, 152 (Pa. Super. 2017) (explaining that "any restitution ordered must flow from only those crimes for which a defendant is convicted, and not any underlying, unproven, conduct").

Rapp does not develop an argument that his **conduct** is unconnected to the loss, only that the loss that flowed from his proven conduct was not sufficiently established. That allegation has no bearing on the legality of the restitution component of his sentence, and there is no disconnect between crime and restitution in this case. Rapp pleaded guilty to stealing gas from Emkey's pipelines, and the restitution ordered was for the financial loss sustained by Emkey as a result of the crime; this satisfies the direct causal connection component. **See Commonwealth v. Stoops**, 290 A.3d 721, 724, (Pa. Super. 2023) ("Courts apply a 'but for' test to determine if a direct causal connection exists between the defendant's criminal conduct and a loss.").

To the extent Rapp argues that some of the gas loss was attributable to other causes, or that the testimony as to the loss sustained was not worthy of belief, these claims go to the weight the court chose to give Rhoades' testimony and evidence on those points and constitutes a challenge to the discretionary aspects of the restitution sentence. **See Weir**, 239 A.3d at 38 ("Because Weir challenges only the amount of the award based on the

sentencing court's consideration of the evidence of loss presented by the Commonwealth, it is a challenge to the discretionary aspects of sentencing."); *see also Commonwealth v. Solomon*, 247 A.3d 1163, 1175 (Pa. Super. 2021) (en banc) ("In accordance with this Court's duty when presented with the requisite nexus between the crime and a restitution amount reasonably calculated based upon record evidence, we may not disturb the sentencing court's exercise of discretion."); *Commonwealth. v. Burwell*, 58 A.3d 790, 794 (Pa. Super. 2012) (trial court was permitted to rely on documentation submitted by victim's employer to substantiate restitution for lost wages). However, Rapp did not file a post-sentence motion concerning the restitution amount entered on May 30, 2023, nor did he raise any such claim at the hearing itself. That the parties operated under the assumption that the May proceeding was a "re-sentencing" or sentence modification did not relieve Rapp of his obligation to raise his discretionary sentencing claims in a post-sentence motion or at the hearing. *See Commonwealth v. Levy*, 83 A.3d 457, 467 (Pa. Super. 2013) (finding discretionary aspects of sentencing claims waived for failure to file a post-sentence motion after resentencing). Rapp therefore waived any challenge to the discretionary components of the restitution amount.

Judgment of sentence affirmed. Motion for remand denied.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE: 01/24/2025